IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DAMON LAVON HORTON,

    Plaintiff,

v.

ED MADDERN,

    Defendant.

Case No. 16-cv-03187-DDC-DJW

## MEMORANDUM AND ORDER

Pro se plaintiff Damon Horton brought this action against Ed Maddern, a corrections officer at El Dorado Correctional Facility.[1] In his Complaint, plaintiff asserts that defendant violated his Eighth Amendment rights by using excessive force against him and battered him in violation of Kansas Administrative Regulation 44-12-324.

On February 22, 2017, defendant filed a Motion to Dismiss, asking the court to dismiss plaintiff's constitutional claim. Doc. 15. Plaintiff did not respond to this Motion, and the time for doing so has passed. *See* D. Kan. R. 6.1(d)(2). So, consistent with D. Kan. Rule 7.4(b), the court "will consider and decide the motion as an uncontested motion." In these circumstances, the court ordinarily "will grant the motion without further notice." D. Kan. Rule 7.4(b). Although the court could grant defendant's motion to dismiss under Rule 7.4(b) without further discussion, it also rules on the motion based on its merits. *E.g.*, *Gee v. Towers*, No. 16-2407, 2016 WL 4733854, at *1 (D. Kan. Sept. 12, 2016) (dismissing complaint under Rule 7.4(b), but also considering motion to dismiss on its merits).

---

[1] Because plaintiff proceeds pro se, the court construes his pleadings liberally and holds them to a less stringent standard than those drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for plaintiff. *Id.* Nor does plaintiff's pro se status excuse him from complying with the court's rules or facing the consequences of noncompliance. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## Background

Because defendant's Motion to Dismiss raises questions under Federal Rules of Civil Procedure 12(b)(1)[2] and 12(b)(6), the facts alleged in plaintiff's Complaint control. *See S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014); *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

Around 5:00 am on April 18, 2016, plaintiff's cellmate attacked him. Defendant and another correction's officer—Officer Wood—responded to the commotion. At first, defendant and Officer Wood tried to use "chemical agents" to break up the fight, but failed—the cell door was closed. Doc. 1 at 2. So defendant radioed the control booth and had the cell door opened. Plaintiff's cellmate promptly shoved him out of the cell into the hallway, placing plaintiff in between defendant and Officer Wood. The fight continued. Plaintiff and his cellmate found their way back into the cell where they continued to brawl. Defendant then intervened, "bludgeon[ing]" plaintiff "from behind" with his radio. *Id.* at 3. Plaintiff lost consciousness for four to seven seconds, and awoke to find his head bleeding in the spot where defendant had struck him. All the while plaintiff's cellmate had not stopped striking him. Indeed, plaintiff's cellmate did not stop striking him until defendant and Officer Wood tried chemical agents a second time. This time they worked. The fight ended and both plaintiff and his cellmate were handcuffed and escorted to another room.

When they arrived in this other room, plaintiff lost consciousness again. This time, someone placed plaintiff on a stretcher and took him to the "Trauma Unit." *Id.* at 3. While in the Trauma Unit, a nurse examined plaintiff and took pictures of his wounds. Plaintiff contends

---

[2] Defendant does not label his Eleventh Amendment argument as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), but the court considers it on that basis. *See Jones v. Courtney*, 466 F. App'x 696, 698–99 (10th Cir. 2012) (explaining that sovereign immunity under the Eleventh Amendment bars federal jurisdiction); *accord Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.8 (1984).

that the nurse did not examine him properly, and so sent him to segregation without having been "properly assessed by medical staff." *Id.* at 4. Plaintiff used a prison hotline to report this failure and was given proper medical attention an hour later.

Though plaintiff received the proper medical attention, he was "confined to [his] bed for months[] due to the injury from [defendant's] radio." *Id.* Besides bed rest, plaintiff has sought medical help at least nine times for the continuing effects of his injury, which include "severe migraines[] and constant ringing in [his] ears." *Id.* He also complains that his pre-existing mental health issues have worsened.

## Analysis

Defendant contends that Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) require dismissal of plaintiff's claims. Defendant invokes Rule 12(b)(1) because, he contends, the court lacks subject matter jurisdiction to hear plaintiff's claims against him in his official capacity ("official-capacity claims"). Defendant invokes Rule 12(b)(6), asserting that the Complaint fails to state a § 1983 claim against him in his individual capacity ("individual-capacity claims"). The court considers each of defendant's arguments below.

**I.      Subject Matter Jurisdiction:  Official Capacity Claims**

**A.      Rule 12(b)(1) Motion to Dismiss Standard**

The court must dismiss any case that it lacks subject matter jurisdiction to hear. Fed. R. Civ. P. 12(h)(3). The court must do so because "[a] court lacking jurisdiction cannot render judgment." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citing *Bradbury v. Dennis*, 310 F.2d 73, 74 (10th Cir. 1962)). The party who invokes the court's jurisdiction bears the burden to establish that jurisdiction in fact exists. *Id.* Here, that party is plaintiff.

3

Because defendant attacks the Complaint's allegations of subject matter jurisdiction, the court "must accept the allegations in the complaint as true." *Holt*, 46 F.3d at 1002 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

B. **Eleventh Amendment Immunity**

Defendant asserts that the Eleventh Amendment bars plaintiff's official-capacity claims against him because, as an employee of the State of Kansas, he is immune from suit in federal court.

The Eleventh Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns," and "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007); *see also Patillo v. Larned State Hosp.*, 462 F. App'x 780, 783 (10th Cir. 2012) (stating that Eleventh Amendment immunity applies to 42 U.S.C. §§ 1983, 1985, and 1986 actions). Eleventh Amendment immunity protects states and state-government officials sued in "[their] official character." *Governor of Ga. v. Madrazo*, 26 U.S. 110, 123–24 (1828). But, federal suits against state-government officials can proceed when the plaintiff only seeks prospective relief for an ongoing violation of rights, *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002), and the relief sought is not premised on state law, *Halderman*, 465 U.S. at 106. Often, the prospective relief envisioned by this exception is an injunction or a declaratory judgment. *Alden v. Maine*, 527 U.S. 706, 747 (1999).

Here, to the extent that plaintiff has sued defendant in his official capacity as a cell-house sergeant for the El Dorado Correctional Facility, plaintiff has sued a state government official. *See Jones*, 466 F. App'x at 699 ("KDOC is an agency or department of the State of Kansas." (citations omitted)). Plaintiff thus may not recover money damages from defendant in his

4

official capacity. Plaintiff's Complaint does not seek any prospective relief. Doc. 1 at 10. The court thus dismisses all of plaintiff's official-capacity claims.

## II. Failure to State a Claim: Individual-Capacity Claims

### A. Rule 12(b)(6) Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

On a motion to dismiss like the one presented here, the court assumes that the Complaint's factual allegations are true. *Id.* at 1263. But it need not accept pure legal conclusions as true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to state a claim for relief. *Iqbal*, 556 U.S. at 678.

### B. Qualified Immunity

Defendant contends that qualified immunity protects him from any potential liability based on any individual-capacity claims. And so, he contends, plaintiff has failed to state a claim for relief.[3]

Public officials deserve qualified immunity from damages liability when performing discretionary functions. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Qualified immunity is the norm for state officials, and it "serves to insulate from suit 'all but the plainly incompetent or those who knowingly violate the law.'" *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Here, plaintiff has sued defendant in his individual capacity for actions he took while serving as a cell-house sergeant for the El Dorado Correctional Facility. Doc. 1 at 1, 10. Defendant thus deserves qualified immunity. *See Procunier v. Navarette*, 434 U.S. 555, 561 (1978) ("We agree with petitioners that as prison officials and officers, they . . . could rely only on . . . qualified immunity." (citations omitted)); *see also Filarsky v. Delia*, 566 U.S. 377, 393 (2012) ("[P]ublic-employee prison guards were entitled to qualified immunity . . . ." (citation omitted)).

Plaintiff could nullify defendant's qualified immunity by alleging facts that, if proven true, would show that: (1) defendant violated his constitutional or federal statutory rights; and by showing that (2) "the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable [official] would have known that his or her challenged conduct was illegal." *Martinez v. Carr*, 479 F.3d 1292, 1294–95 (10th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated by Pearson v. Callahan*, 555 U.S. 223 (2009)).

---

[3] Although defendants typically present a qualified immunity defense in a motion for summary judgment, the Tenth Circuit has recognized that "qualified immunity is a question of law to be resolved at the earliest possible stage of litigation" when, as here, there is no relevant factual dispute. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007) (quoting *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001)); *see also Henderson v. Simms*, 54 F. Supp. 2d 499, 501, 503 (D. Md. 1999) (granting motion to dismiss based on qualified immunity).

The court may consider either part of this two-prong test first. *Pearson*, 555 U.S. at 236. The court elects to begin its analysis here with the first prong.

Plaintiff alleges that defendant violated his Eighth Amendment rights when defendant used excessive force against him. A prison inmate may allege an Eighth Amendment violation based on excessive force if the force applied constitutes an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). Our Circuit employs a two-part test to determine whether a defendant used excessive force: "(1) an objective prong that asks 'if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation,' and (2) a subjective prong under which the plaintiff must show that 'the officials act[ed] with a sufficiently culpable state of mind.'" *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (quoting *Giron v. Corrs. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999)). For the purposes of this motion, the court assumes—without deciding—that plaintiff alleges a sufficiently serious injury to establish a constitutional violation. So, the only question left is whether plaintiff alleges facts showing that defendant acted with a sufficiently culpable mind.

"Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff," the question whether a defendant acts with a sufficiently culpable state of mind "turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley*, 475 U.S. at 320–21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *rev'd on other grounds Graham v. Connor*, 490 U.S. 386 (1989)). The Supreme Court suggests that courts consider the following factors when determining whether a defendant acted in good faith: (1) "the need for the

application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." *Id.* at 321 (citations omitted).

Two cases from our circuit provide helpful examples of a defendant acting with a sufficiently culpable state of mind: *Whitington v. Sokol*, No. 06-cv-01245-PAB-CBS, 2009 WL 2588762 (D. Colo. Aug. 18, 2009), and *Castorena v. Werholtz*, No. 06-3299-JAR, 2007 WL 2225936 (D. Kan. Aug. 2, 2007).

In *Whitington*, the District of Colorado denied the defendants' summary judgment motion based on qualified immunity because "the inmate's versions of the facts set forth an exaggerated response to a non-violent inmate." 2009 WL 2588762, at * 11. There, the inmate claimed that the defendants'—prison officials attempting to move the inmate to segregation—took him to "a secluded part of the prison where there were no cameras or other prisoners," removed his restraints, and told him to put on the orange pants that would designate him as a restricted privileges inmate. *Id.* at *10. The inmate claimed he refused and began to back away from the defendants out of fear, and "[i]t was at this point that the defendants threw him to the ground, beat, and shocked him." *Id.* The court concluded that, "[a]t most, under [the inmate's] version of the events, he was disobeying a lawful order to put on the proper clothing. He was not violent and did not provoke the incident," and so "there was little need for the application of force." *Id.* The court thus held that, "[u]nder these facts, there was no legitimate penological purpose for the defendant's unprovoked actions." *Id.* So it declined to grant summary judgment based on the defendants' qualified immunity defense. *Id.*

8

In *Castorena*, Judge Robinson of our court granted the defendant's motion to dismiss based on qualified immunity. 2007 WL 2225936, at *3. There, the inmate alleged that he and another inmate were in a fight when the defendant entered the room and repeatedly ordered both inmates to the ground. *Id.* at *1. The inmate contended that he could not comply with these orders because "he had been hit in the head during the altercation and was temporarily unresponsive." *Id.* Despite the fact that he "was standing in a 'non-aggressive manner with both hands at his side [and] incoherent,'" the defendant struck the inmate "in the face with his radio." *Id.* Judge Robinson held that these allegations were insufficient to show that the defendant had acted maliciously or sadistically and for the very purpose of causing harm because the inmate admitted "he was involved in a physical altercation with another inmate" and he had "failed to comply with repeated orders to lie down." *Id.* at *3. Judge Robinson reasoned that these facts "strongly suggest[ed] that the force taken by [the defendant] was applied in a good faith effort to maintain or restore discipline." *Id.*

Plaintiff's allegations here more closely resemble the facts of *Castorena* than those of *Whitington*. Before defendant struck plaintiff with his radio, he had tried to stop the fight by deploying chemical agents. When this proved unsuccessful, the fight moved out into an open area then back into the cell, where plaintiff admits he "mounted" his cellmate to continue beating him. Doc. 1 at 3. Only then did defendant strike plaintiff with the radio. But even that did not stop the fight. Defendant had to use chemical agents a second time before both plaintiff and his cellmate could be subdued. So, unlike *Whitington*, plaintiff cannot characterize his actions as nonviolent disobedience, making defendant's use of force here the product of a legitimate penological interest—and not done merely out of malice. Indeed, plaintiff alleges a situation almost identical to that in *Castorena*. The only difference is that in *Castorena*, the fight had

9

stopped when the defendant used force, whereas here, plaintiff and his cellmate were still striking each other when defendant used force. Based on plaintiff's admitted involvement in the fight, and his admitted failure to stop fighting, the Complaint does not allege that defendant acted maliciously or sadistically for the very purpose of causing harm. Rather, the Complaint alleges facts showing that defendant used force in a good faith effort to restore order and stop the fight.

The fact that plaintiff alleges that defendant could have used a different, non-physical method to stop the fight does not change the court's conclusion. Hindsight is always 20-20, which is why the court does not ask how it (or the plaintiff) would have handled the situation. *See Sampley v. Ruettgers*, 704 F.2d 491, 496 (10th Cir. 1983) ("A court should also bear in mind that a prison guard, to maintain control of inmates, must often make instantaneous, on-the-spot decisions concerning the need to apply force without having to second-guess himself." (citations omitted)). The court's job is not to ask whether defendant "use[d] the minimum force necessary or even reasonably proportional force," its job is to ask whether defendant acted maliciously or sadistically. *Pena v. Greffet*, 108 F. Supp. 3d 1030, 1033 (D.N.M. 2015) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). So, "[e]ven if, in hindsight," defendant "might have responded differently" and "even if other responding officers might have used different techniques" to diffuse the situation, "that conclusion does not, standing alone, establish a constitutional violation." *Stevenson v. Cordova*, No. 14-cv-00649-CBS, 2016 WL 5791243, at *21 (D. Colo. Oct. 4, 2016). The court thus grants defendant's motion to dismiss count one of the Complaint.

**III.    Order to Show Cause:  Count Two of Plaintiff's Complaint**

Because defendant moved to dismiss just count one of the Complaint, count two remains viable.  But, the court has concerns whether it has jurisdiction to hear count two of the Complaint now that it has dismissed count one.

The court has an independent obligation to satisfy itself that subject-matter jurisdiction exists.  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).  And, it "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Penteco Corp. Ltd. P'ship v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991) (quoting *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

To invoke the court's subject matter jurisdiction, the Complaint must allege facts sufficient to support either diversity jurisdiction or federal question jurisdiction.  When conducting this jurisdictional analysis, the court accepts the Complaint's allegations as true because the defendants have not challenged them or presented contrary evidence.  *See Holt*, 46 at 1002.

Diversity jurisdiction requires two things:  the requisite amount-in-controversy and complete diversity.  28 U.S.C. § 1332; *Newman-Green Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 & n.1 (1989).  The Complaint explicitly satisfies the first requirement, claiming more than $75,000 in damages.  But it fails the second requirement.  Plaintiff alleges that he and defendant are both citizens of the State of Kansas, thus plaintiff fails to allege diversity of citizenship.  Doc. 1 at 1.  The court thus does not have jurisdiction over plaintiff's Complaint unless he has alleged facts sufficient to support federal question jurisdiction.

Federal question jurisdiction exists when the "[p]laintiff's cause of action [is] created by federal law." *Rice v. Office of Servicemembers' Grp. Life Ins.*, 260 F.3d 1240, 1245 (10th Cir. 2001) (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986)). "[F]ederal question jurisdiction must appear on the face of a plaintiff's well-pleaded complaint." *Martinez v. U.S. Olympic Comm.*, 802 F.2d 1275, 1280 (10th Cir. 1986) (citations omitted). And "[t]he complaint must identify the statutory or constitutional provision under which the claim arises, and allege sufficient facts to show that the case is one arising under federal law." *Id.* (citing *Kirkland Masonry, Inc. v. C.I.R.*, 614 F.2d 532, 533 (5th Cir. 1980)).

Because the court has dismissed plaintiff's § 1983 claim, any jurisdiction must rest on the claim asserted by count two of the Complaint. In count two, plaintiff asserts a claim for battery under Kansas Administrative Regulation 44-12-324. Doc. 1 at 5. This does not appear to be a federal cause of action. So, it seems, the Complaint does not furnish a basis for federal question jurisdiction.

Given this apparent shortcoming, the court could dismiss this action on its own motion under Rule 12(h)(3). In fairness, however, plaintiff has not had an opportunity to address the jurisdictional viability of a count two-only complaint. So, in lieu of dismissing the case in its entirety, the court orders plaintiff to show cause in writing, **on or before May 19, 2017**, why the court should not dismiss this action for lack of subject-matter jurisdiction.

**IT IS THEREFORE ORDERED THAT** defendant Ed Maddern's Motion to Dismiss (Doc. 15) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff is required to show good cause in writing, **on or before May 19, 2017**, why the court should not dismiss count two of the Complaint—and thereby this action—for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

**Dated this 28th day of April, 2017, at Topeka, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**